UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Daymon L. Haislip,                              Case No. 3:22-cv-1498

        Plaintiff,

   v.                                           MEMORANDUM OPINION
                                                    AND ORDER

Management and Training Corporation, *et al.*,

        Defendants.

## I. INTRODUCTION

Plaintiff Daymon Haislip, an inmate at the Lebanon Correctional Institution in Lebanon, Ohio, filed this lawsuit *pro se* against Defendants Management and Training Corporation ("MTC"), Lori Shuler, Sergeant Brown, and Lt. Parrish. Haislip asserts Defendants violated his constitutional rights during an incident that occurred on April 14, 2022, at the North Central Correctional Complex ("NCCC") in Marion, Ohio, where Haislip previously was incarcerated. (Doc. No. 1).

Defendants have filed motions for summary judgment and to exclude potential expert testimony. (Doc. Nos. 24 and 26). Haislip has not filed a response to either motion and his deadline to do so has passed. For the reasons stated below, I grant Defendants' motion for summary judgment and deny their motion to exclude expert testimony as moot.

## II. BACKGROUND

On April 14, 2022, Haislip and other members of his housing unit went to the institutional cafeteria for lunch. A dispute arose between Haislip and a food service worker employed by MTC

because the worker believed Haislip already had gone through the line and was refusing to give him a food tray. Haislip was upset by this. That day "was turkey wrap day," and he and the other inmates in his housing unit were "anxious to get out there to try out the new [spring] menu" at NCCC. (Doc. No. 22-1 at 18). Haislip believed the worker intentionally singled him out because "prior to this[,] she had already been messing with me on several other [occasions]." (*Id.* at 22).

Lori Shuler, NCCC's institutional inspector, arrived and ordered Haislip to get out of the food line. Haislip then began to walk out of the cafeteria while telling Shuler he was going to the captain's office to write a complaint against her. (*Id.* at 24-25). Shuler called for assistance and other officers, including Lieutenant Kyle Parish, responded. (Doc. No. 24-2 at 1). Haislip asserted Parish was the first officer to attempt to handcuff him. According to Haislip, Parish pinned one arm behind his back and applied the handcuff tight enough to cut off his circulation and cause an immense amount of pain. (Doc. No. 22-1 at 28-29). Haislip stated it felt like Parish and another officer were trying to break his hands. (*Id.* at 30-31). Haislip also claimed someone sprayed him in the face with OC spray because they were unable to cuff his other hand, though he denied resisting the officers during the incident. (*Id.* at 31-32).

Parish stated that Haislip became combative after permitting Parish to place the handcuff on his left hand. (Doc. No. 24-2 at 1). Parish asserted he sprayed Haislip with OC spray because inmates who "refuse to allow both wrists to be handcuffed present an immediate and serious risk of injury and harm to others because the uncuffed handcuff can be swung and used as a weapon by an inmate." (*Id.*).

Haislip was taken to the medical unit after the incident and received treatment for facial irritation and burning caused by the OC spray. (Doc. No. 24-3 at 46). He did not initially report any pain in his wrist, (*id.*), though he sought medical attention approximately six weeks later for a wrist injury allegedly caused by the handcuffing. (Doc. No. 22-1 at 38-39).

2

NCCC conducted an investigation into the officers' use of force against Haislip. The investigation determined the use of force was justified because Haislip "refused to be handcuffed, became combative when partially handcuffed, and did not follow a direct order." (Doc. No. 24-3 at 2).

Haislip filed suit on August 23, 2022, asserting claims under 42 U.S.C. § 1983 for alleged violation of his Eighth Amendment rights, as well as under Ohio law. (Doc. No. 1).

### III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV.  ANALYSIS

Haislip asserts ten claims for relief. In his first two causes of action, Haislip asserts claims pursuant to 42 U.S.C. § 1983, arguing Defendants violated his Eighth Amendment rights by using excessive force to handcuff him and by placing him in the segregation unit after the handcuffing incident. (Doc. No. 1 at 4-5). Haislip also asserts eight claims under Ohio law. Four claims allege deprivation of his constitutional rights in violation of Ohio Revised Code § 2921.45. (*Id.* at 5). The remaining four assert violations of Ohio common law: assault and battery; two claims of negligence; and fraudulent misrepresentation. (*Id.* at 5-6).

Defendants have moved for summary judgment on each of Haislip's claims. Haislip did not respond to Defendants' motion, and his deadline to do so has passed. (*See* Doc. No. 18) (setting Feb. 1, 2024 deadline for brief in opposition). Haislip's failure to respond does not alter my analysis, as the burden remains on Defendants "to demonstrate that summary judgment is appropriate." *High Concrete Tech., LLC v. Korolath of New England, Inc.*, 665 F. Supp. 2d 883, 887 (S.D. Ohio 2009) (citing *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992), and *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). As I discuss in greater detail below, I conclude Defendants have carried their burden and are entitled to summary judgment.

### A. SECTION 1983 CLAIMS

Section 1983 permits a plaintiff to sue a person acting under color of state law who has caused the plaintiff to be subject to "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Haislip asserts Defendants violated his Eighth Amendment rights by placing him in the segregation unit for 10 days after the handcuffing incident and by using excessive force during the handcuffing incident. (Doc. No. 1 at 4-5). Defendants are entitled to summary judgment on both claims.

The Eighth Amendment prohibits "cruel and unusual punishments," including "punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain.'" *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). When an inmate's conditions of confinement form the basis for a claim of cruel and unusual punishment, those conditions may be found to violate the Eighth Amendment when they "deprive [an] inmate[] of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

As Defendants argue, the mere placement of an inmate in a segregation cell does not violate the Eighth Amendment. "Not every unpleasant experience a prisoner might endure while

4

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). And, "[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). Haislip's objection to Defendants' decision to place him in the segregation unit after the handcuffing incident is not a sufficient legal basis for a reasonable jury to find in his favor. Therefore, I conclude Defendants are entitled to summary judgment on his first Eighth Amendment claim.

In his second Eighth Amendment claim, Haislip asserts Defendants used excessive force while handcuffing him. An inmate alleging a prison official's use of force violated the Eighth Amendment must show that "the offending conduct . . . reflect[s] an 'unnecessary and wanton infliction of pain.'" *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). There are two components to a use-of-force claim. The first is the objective component, which "requires that the pain be serious." *Moore*, 2 F.3d at 700 (citation omitted). The second component is the subjective component, which requires that the "offending, non-penal conduct be wanton." *Moore*, 2 F.3d at 700 (citation omitted). Here, even if Haislip could show his pain was objectively serious, the record evidence of Haislip's injuries, when viewed in the light most favorable to Haislip, does not demonstrate that any of the Defendants acted maliciously.

In "the circumstances of heightened tensions, as in prison disturbance cases, wantonness constitutes malicious and sadistic acts whose very purpose is to inflict harm." *Moore*, 2 F.3d at 700 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). *See also Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992) (holding "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*[ v.

5

*Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm").

As the United States Court of Appeals for the Sixth Circuit has noted:

> [T]he Supreme Court has identified several factors to consider [in determining whether officers acted with malicious intent]: !What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?

*Johnson v. Sootsman*, 79 F.4th 608, 618 (6th Cir. 2023) (citing *Hudson*, 503 U.S. at 7-8 and *Whitley*, 475 U.S. at 321).

First, the Defendants' use of force, and the degree of that force, was proportional to the need to bring Haislip under control. Haislip disobeyed several direct orders to stop walking away. While he briefly stopped and allowed officers to cuff his left hand, there is no dispute that officers were not able to place the second handcuff on his right hand. The Sixth Circuit has approved the use of OC spray "as a proportional level of force in response to a prisoner's refusal to follow orders" and as an attempt to "gain control of [an inmate] and handcuff him." *Johnson*, 79 F.4th at 620 (citing cases).

Second, a showing that the "officer's use of force caused the prisoner to suffer only some tenderness, bruising, and slight swelling," or that the inmate suffers only minor injuries that heal on their own, also indicates the use of force was not wanton. *Johnson*, 79 F.4th at 619 (citations and internal quotation marks omitted). There is no genuine dispute of material fact about the extent of Haislip's injuries. Haislip asserts he suffered bruising and nerve damage that occasionally results in numbness and tingling. (Doc. No. 22-1 at 41-42). Records from Haislip's medical appointments (which first occurred approximately six weeks after the handcuffing incident) reflect that the doctor observed "no redness, no swelling, no deformity, no limited range of motion, full left wrist range of motion, [and] full left grip hand strength." (*Id.* at 43). The doctor diagnosed Haislip with "irritation

6

of the radial nerve from being handcuffed tightly" and indicated that his symptoms should resolve over time. (*Id.*). Haislip did not testify that he suffers from any residual limitations from his injuries. (*Id.* at 41-43).

Defendants have shown that a reasonable jury would conclude that their use of handcuffs and OC spray were the result of an attempt to restore discipline and not from a malicious or sadistic desire to cause harm. *Whitley*, 475 U.S. at 321. Therefore, I grant Defendants' motion for summary judgment on Haislip's Eighth Amendment use-of-force claim.

### B. OHIO LAW CLAIMS

As I noted above, Haislip asserts two sets of four claims under Ohio statutory and common law. In the first set of four, Haislip seeks to hold the Defendants liable for violating his constitutional rights through Ohio Revised Code § 2921.45. (*See* Doc. No. 1 at 5). That statute says:

> (A) No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.
>
> (B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

Ohio Rev. Code § 2921.45.

Section 2921.45, by its plain terms, is a criminal statute. And Haislip cannot prevail on a civil claim tied to this statute because Ohio law does not permit a plaintiff to "assert a claim, predicated upon an alleged violation of a criminal statute, because '[c]riminal violations are brought not in the name of an individual party but rather by, and on behalf of, the state of Ohio or its political subdivisions.'" *Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 928 (S.D. Ohio 2001) (quoting *Biomedical Innovations, Inc. v. McLaughlin,* 658 N.E.2d 1084, 1086 (Ohio 1995)). Therefore, I conclude no reasonable jury could find in Haislip's favor as a matter of law on his four § 2921.45 claims and grant Defendants' motion for summary judgment on those claims.

7

In his second set of four Ohio law claims, Haislip asserts three tort claims and a fraudulent misrepresentation claim. His tort claims are barred by Ohio Revised Code § 2744.03, which provides state employees with immunity from liability unless their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Haislip's tort claims, which are based upon his allegations of excessive force, fail for the same reason as his § 1983 claims: the record does not contain evidence showing Defendants acted with malice. *Chappell v. City of Cleveland*, 585 F.3d 901, 916 n.3 (6th Cir. 2009). Therefore, Defendants are entitled to summary judgment on these claims.

Finally, I conclude Defendants also are entitled to summary judgment on Haislip's fraudulent misrepresentation claim. A plaintiff asserting a claim for fraudulent misrepresentation under Ohio law must "'establish all of the following elements:

> (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such other disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.'"

*Fifth Third Bank v. Cope*, 835 N.E.2d 779, 787-88 (Ohio Ct. App. 2005) (quoting *Cardi v. Gump*, 698 N.E.2d 1018, 1022 (Ohio 1997)).

In support of this claim, Haislip alleges Shuler knowingly made false material statements in her report, with the intention that the Rules Infraction Board rely on those statements and place Haislip in segregation. (Doc. No. 1 at 6). But the record does not contain any evidence that demonstrates Shuler made false material statements.

And even if I were to assume Haislip could produce this required evidence, his claim would fail because there is no evidence that Haislip relied on any false material statements. Haislip must point to evidence that Shuler intended to mislead Haislip and that Haislip would justifiably rely on the alleged false material statements. *See, e.g., Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 491 N.E.2d

8

1101, 1106 (Ohio 1986) (citing *Wells v. Cook*, 16 Ohio St. 67, 69 (Ohio 1865)).  He has not done so, and therefore Defendants are entitled to summary judgment on this claim as well.

## V.  CONCLUSION

For the reasons stated above, I grant Defendants' motion for summary judgment on all claims asserted by Plaintiff Daymon Haislip.  (Doc. No. 24).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge